

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

*Superseded by*
*art 29d. P.C.S.*

Honorable Fred Erisman
Criminal District Attorney
Longview, Texas

Dear Sir:

Opinion No. O-2742
Re: May the commissioners' court au-
thorize the county auditor to pay
the bills for guarding a prisoner
under the facts set forth?

Your recent request for an opinion of this Depart-
ment on the above stated question has been received.

We quote from your letter as follows:

"On April 15th, 1935 Donald Covin was indicted
for the murder of Emma Sage, alleged to have occurred
in Gregg County on April 11th, 1935. This defendant
had previously been convicted on October 21st, 1931
for murder. His case was tried on April 24th, 1935 and
a death sentence was given, which sentence was affirmed
by the Court of Criminal Appeals on May 1st, 1936. On
May 8th, 1936 an affidavit that the defendant had be-
come insane since his conviction was filed and on June
3rd, 1936 a jury found him insane. He was committed
to a State Institution at Rusk, and remained there un-
til the summer of 1938, at which time he escaped.

"During the month of November, 1938, he was re-
arrested and on November 26th, 1938 an affidavit was
filed by the District Attorney stating that Covin had
regained his sanity. The case was tried by a jury on
December 15th, 1938 and a jury found that Covin was in-
sane.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"The Rusk institution refused to accept Covin, notwithstanding the jury finding, and he has been confined to the Gregg County Jail since that time.

"Recently Covin suffered a severe illness from a kidney ailment and for a time it appeared that he would not live. In the opinion of the County doctors it was necessary that he be placed in the County hospital, so that every effort to save his life might be made.

"The Sheriff did not have a sufficient number of deputies to guard Covin while he was in the hospital and thought it necessary to employ outside guards to attend this man in the hospital. These guards were on duty both day and night and for a large part of the time Covin was shackled to the hospital bed.

"There has been presented to this office a request for an opinion by the County Auditor, R. W. Wyche, as to whether or not he may legally pay Alton Lee $110.00 for guarding Donald Covin 22 days in the Gregg Memorail Hospital. Likewise, a bill of Willie Thomas' for $235.00 for 47 days, guarding such prisoner, and Jodie Morris, $125.00 for guarding this prisoner 25 days at the hospital.

"The County physician, who was in attendance on Covin during his illness, testified that in his opinion these guards were necessary. The Sheriff has also certified that such guards were necessary and that the charges for such services are reasonable, having been performed throughout 24 hours of the day.

"The County budget provides that the District Attorney's office shall have $745.00 for trial expense.

"It is the intention of this office to again test the sanity of Donald Covin as soon as he is physically able to stand trial, and we expect to use the testimony of these guards, who have been in constant attendance on him for nearly two months to testify as to his present sanity, together with doctors and nurses and others who have had ample opportunity to observe him.

"The County Auditor has requested our office
for an opinion as to whether or not he may legally
pay the bills of these individuals and charge the
same against the budget appropriation for this of-
fice under the circumstances.

"It is our opinion that under the provisions of
Article 1041, Code of Criminal Procedure, Gregg
County having in excess of 40,000 population, accord-
ing to the 1940 figures, that the Sheriff could em-
ploy as many guards as were necessary for the safe
keeping of this prisoner, but because of the particu-
lar circumstances involved in this matter, that he
would not be limited to $4.50 perday, as stated in
the statutes, since the prisoner was held in the hos-
pital under the care of a doctor, rather than in the
County jail.

"We have carefully briefed the problems presented
here and find no case exactly on point.

"It is our opinion that the Commissioners Court
may authorize the County Auditor to pay the above
bills and order the same withdrawn from either the
general funds of the County or charge them against
the budget item of this office under the facts stated.

"Will you please advise me whether or not our
office is correct on our position in this matter?"

When a defendant becomes insane after conviction,
Articles 925 and 926, Code of Criminal Procedure, provide in
effect that "if the defendant is found to be insane, all fur-
ther proceedings in the case against him shall be suspended
until he becomes sane"; that "the court shall make and have
entered upon the minutes an order committing the defendant to
the custody of the sheriff, to be kept subject to the further
order of the county judge of the county"; and that when he has
been so committed, the "proceedings shall forthwith be certi-
fied to the county judge, who shall at once take the necessary
steps to have the defendant confined in the lunatic asylum un-
til he becomes sane. . . ."

It is apparent from the foregoing facts that the de-
fendant was indicted for the offense of murder in Gregg County,

was tried in said county, found guilty and given a death sentence. The case was appealed to the Court of Criminal Appeals and affirmed by said Court. A few days later, an affidavit alleging that the defendant had become insane since his conviction was filed and upon trial of this issue, the defendant was found to be insane and was committed to a State institution at Rusk, Texas. About two years later, the defendant escaped from the above mentioned institution and in a few months was captured again. Soon thereafter an affidavit alleging that defendant had regained his sanity was filed as provided by Article 928, Code of Criminal Procedure. A jury found that the defendant was insane. The institution at Rusk, Texas, refused to accept the defendant, notwithstanding the jury findings, and he was confined to the Gregg County Jail. We assume that the court entered the same order on the minutes of the court as was previously entered when the defendant was first tried to determine whether he was insane, committing the defendant to the custody of the sheriff, to be kept subject to further order of the county judge; therefore, the defendant was a prisoner legally committed to the custody of the sheriff.

Article 6871, Vernon's Annotated Civil Statutes, reads as follows:

"Whenever in any county it becomes necessary to employ a guard for the safe keeping of prisoners and the security of jails, the sheriff may, with the approval of the commissioners' court, or in the case of emergency, with the approval of the county judge, employ such number of guards as may be necessary; and his account therefor, duly itemized and sworn to, shall be allowed by said court and paid out of the county treasury. Provided further that all counties in this State having a population of more than one hundred and forty thousand (140,000) inhabitants and less than two hundred and ninety thousand (290,000) inhabitants, according to the last preceding Federal census, no guard, matron, jailer, or turnkey shall work more than eight (8) hours in one day. And all counties coming under the provisions of this Act, at least one man shall be on guard on each floor of said jail where male prisoners are kept, and at least one matron shall be on guard on each floor where female prisoners are kept; and that not less than two (2) employees shall be on guard in the main office of said jail at any one time. In case of emergency, those com-

ing under the provisions of this Act shall be sub-
ject to the call of the sheriff."

Articles 1037 and 1041, Code of Criminal Procedure,
read as follows:

Article 1037. "Each county shall be liable for
all expenses incurred on account of the safe keeping
of prisoners confined in jail or kept under guard ex-
cept prisoners brought from another county for safe
keeping, or on habeas corpus, or change of venue; in
which cases the county from which the prisoner is
brought shall be liable for the expenses of his safe
keeping."

Article 1041. "The sheriff shall be allowed for
each guard or matron necessarily employed in the safe
keeping of prisoners two dollars and fifty cents ($2.50)
for each day. No allowance shall be made for the board
of such guard or matron, nor shall any allowance be
made for jailer or turnkey, except in counties having a
population in excess of forty thousand (40,000) inhabi-
tants according to the last preceding or any future Fed-
eral census. Such counties of forty thousand (40,000)
or more inhabitants the commissioners' court may allow
each jail guard, matron, and turnkey four dollars and
fifty cents ($4.50) per day; provided that in counties
having a population in excess of three hundred and fifty-
five thousand (355,000) inhabitants, according to the
last preceding or any future Federal census, each jail
guard, matron, jailer and turnkey shall be paid not
less than one hundred and seventy-five ($175.00) dollars
per month."

The above mentioned statutes are the only statutes
that we have been able to find pertaining to the employing of
guards and providing compensation for their services. The case
of State v. Carnes, 106 S. W. (2d) 397, among other things, holds
in effect that commissioners' courts are not precluded from
approving and allowing guards in counties of less than forty
thousand population.

Article 1626, Vernon's Annotated Civil Statutes, reads
in part as follows:

"Claims against a county shall be registered
in three classes, as follows: . . . (3). All the
general indebtedness of the county, including feed-
ing and guarding prisoners, and pauper's claims."

County officials in Gregg County are compensated on
an annual salary basis. The Officers' Salary Law, among other
things, provides in effect that in all cases where the county
officers or precinct officers of a county are compensated for
the services by the payment of an annual salary, neither the
State of Texas nor any county shall be charged with or pay to
any of the officers so compensated, any fee or commission for
the performance of any or all of the duties of their offices for
such officer shall receive such salary in lieu of all other fees,
commissions or compensation which they would otherwise be author-
ized to retain.

A sheriff who is compensated on a salary basis cannot
be allowed the sum of $2.50 per day for each guard necessarily
employed for the safe keeping of prisoners. However, we are of
the opinion that this statute fixes the amount of compensation
to be allowed a guard employed in the safe keeping of prisoners
in those counties having a population of less than forty thou-
sand inhabitants according to the last preceding Federal census.
Article 1041 provides that in counties having a population in
excess of forty thousand inhabitants according to the last pre-
ceding or any future Federal census, the commissioners' court
may allow each jail guard, etc. the sum of $4.50 per day. In
view of the facts stated in your inquiry and the authorities
above mentioned, you are respectfully advised that it is the
opinion of this Department that the expenses incurred in em-
ploying guards as above stated would be general indebtedness of
the county and could be paid only out of the general fund.

It is our further opinion that after the 1940 Feder-
al census was officially stated and the census showed that
Gregg County had a population in excess of forty thousand in-
habitants, the guards employed could be paid the maximum of $4.50
per day and would not be entitled to the sum of $5.00 per day
as shown in their claims. According to the 1930 census, Gregg
County had a population of less than 40,000 inhabitants; there-
fore, the provisions of Article 1041, supra, providing $4.50
per day as the maximum compensation for guards, etc., would not
apply to Gregg County until the 1940 census became official
showing the population of said county to be in excess of forty

thousand inhabitants. If a part or all of the services above mentioned performed by the guards was performed or rendered before the 1940 Federal census became effective, then it is our opinion that $2.50 per day for each guard is the maximum amount that the county could legally pay for such services.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ardell Williams
Assistant

AW:BBB

APPROVED SEP 23, 1940

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS,

APPROVED
opinion committee
By BWB
chairman